**Jerry D. FOSTER, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defend-**
**ant in Error.**

**No. A–13734.**

Court of Criminal Appeals of Oklahoma.

Nov. 17, 1965.

A. W. Mauldin, Duncan, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

Jerry D. Foster and Doyle Cantwell were charged jointly in the district court of Stephens County, Oklahoma with the crime of burglary in the second degree. This defendant was tried by a jury, found guilty, and sentenced to serve two years in the State Penitentiary. Appeal has been perfected to this Court.

The appeal was filed herein on July 14, 1965, and under Rule 6 of the Court, brief was due within thirty days from that date. No brief has been filed on behalf of the defendant, and no application for extension of time has been made. The case was assigned for oral argument for October 20, 1965, at which hearing no appearance was made for defendant. The case was submitted at that time on the record, for an opinion.

This Court has repeatedly held that where the defendant appeals from a judgment of conviction, and no briefs are filed, and no argument presented, this Court will examine the information, the evidence and ascertain if it supports the verdict; and will make an examination of the instructions excepted to, and the judgment and sentence, and if no material error is apparent, the judgment will be affirmed. Morse v. State, Okl.Cr., 327 P.2d 707; Fitzgerald v. State, Okl.Cr., 283 P.2d 208; Steele v. State, Okl.Cr., 357 P.2d 252; Hulsey v. State, 82 Okl.Cr. 332, 169 P.2d 771, and numerous other cases.

Defendant and Doyle Cantwell were charged with breaking and entering a drive-in cafe belonging to Coy Beck, in the town of Marlow, in Stephens County. A severance was granted, and this defendant was tried first.

Coy Beck testified that he closed his drive-in the night of October 31, 1964 at about 11:30 or 12 o'clock. At approximately two o'clock the next morning he was called back to his drive-in by the city police. He stated that the rear door had two locks, a thumb bolt and a night latch. When he returned to the cafe he found the glass in a sliding service window, 14½" by 14½" had been broken and the window and the frame were laying on a table approximately six feet from the wall; and that the rear door was closed with the night latch on, but the thumb bolt was not bolted, which indicated that someone had opened the door from the inside, and then closed the door as he went out.

There was nothing missing from the place of business, but a coin-operated machine had been moved.

Two city policemen of Marlow testified that they drove by this drive-in, drove down to Main Street, turned and went back by the drive-in within a period of time of ten or fifteen minutes. That as they approached the drive-in the second time, they observed a car parked on the south side of the drive-in, headed east, and they started pulling into the driveway, which circled the drive-in. When they pulled into the driveway, the man who they could see sitting in the car started driving around the drive-in. He reached the highway and headed north at a rapid rate of speed.

One of the officers testified that he saw a man near the back door of the building, who ran out and got in the car on the driver's side. Both officers testified they pursued the car about five miles north on the highway, with the red light on, and the siren sounding. During the pursuit, they reached a speed of 110 miles an hour. One of the officers fired two or three shots, one of which hit the trunk of defendant's car. When they reached the stopped car, it was very hot, and the radiator was boiling. They arrested the two men and took them back to town. Defendant's car was later towed

in by a wrecker, and was searched. Several articles were recoverd from the automobile and were introduced in evidence.

The defendant and his co-defendant both testified. Defendant stated that he had been in Marlow in the afternoon; that he had loud pipes on his car, and when he saw the police car coming towards him he turned into the drive-in, drove around the building and rapidly "took off" going north. He stated that he thought the officers might be after him on account of driving with a loud muffler. Both defendants lived in Ardmore.

The jury brought in a verdict of guilty, fixing the punishment at two years, and recommended that the sentence be suspended.

Defendant filed a motion for new trial, in which his only ground was: "Improper conduct on the part of the county attorney in cross-examining the defendant pertaining to former charges and convictions in which the county attorney well knew was improper; and in which the county attorney knew they would be unable to prove and such statements and questions by the county attorney were for the sole purpose of prejudicing the minds of the jurors and highly prejudicial to this defendant's rights."

The record concerning the questions by the county attorney and complained of by defendant show the following:

By the County Attorney: "Q Now, I believe you said you hadn't been in any trouble before? A Yes, sir.

Q Did you get in trouble while you was in the Navy? A I've never been in the Navy.

Q You've never been in the Navy?

A No, I sure haven't.

Mr. Mauldin: We object to this unless he expects to prove it.

Q Have you ever been in trouble with the officers at Ardmore?

By Mr. Mauldin: I object to that. He can ask him if he's ever been convicted.

By the Court: The objection will be sustained. The jury is instructed to disregard the question asked by the County Attorney regarding being in trouble; its not proper."

These were not proper questions, but after considering the nature of the questions, in connection with the other evidence, and the fact that the objection was promptly sustained, it is our conclusion that these questions were not of such a prejudicial nature as to require a reversal of the judgment of conviction. This is especially true in view of the court's instruction to the jury to disregard the questions, and that they were not proper.

We have carefully examined the information and find it properly charges the defendant with burglary in the second degree. An examination of the instructions given by the trial court indicate they were ample, and very fair. Defendant did not object to any of the instructions and offered no additional instructions.

We note that the verdict returned by the jury found the defendant guilty as charged in the information, and unanimously recommended that the sentence be suspended.

The record shows that at the hearing on the motion for new trial, on March 29, 1965, the State presented two statements which were, by direction of the court, filed in the case. The first one was by the sheriff of Carter County, stating that on the date of the statement, his office held a felony warrant for the two defendants involved herein, and that at that time they were both free on $2000 bonds; that the officers of Carter County, and the officers from the Stephens County sheriff's office, with the aid of search warrants, searched the homes of these two men and that they found and confiscated stolen tools, tires and equipment valued roughly at $2000. The second statement was offered by a deputy in the Stephens County sheriff's office, and verified the statement made by the Carter County sheriff. Under

such circumstances, the jury's recommendation for suspension of the sentence became a nullity.
a nullity.

Finding no error, the judgment and sentence of the district court of Stephens County, Oklahoma, is affirmed.

BUSSEY, P. J., and NIX, J., concur.